# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RAYMOND E. TORRES,**

        **Plaintiff,**

**-vs-**                               **Case No. 6:07-CV-1384-ORL-18KRS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This matter came before the Court for consideration without oral argument on the complaint filed by Raymond E. Torres seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Social Security benefits. Doc. No. 1. The Commissioner answered the complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA"). Doc. Nos. 10, 11.

**I.   PROCEDURAL BACKGROUND.**

      Torres applied for disability benefits under the Supplemental Security Income for Aged, Blind, and Disabled program ("SSI"), 42 U.S.C. § 1381 *et seq.*, and for disability benefits under the Federal Old Age, Survivors and Disability Insurance program ("OASDI"), 42 U.S.C. § 401 *et seq.*, alleging that he became disabled on January 4, 1997. R. 79-81.[1] Because a previous

---

[1] The SSI application is not in the record. *See* R. 5.

application for OASDI benefits had been denied on March 22, 2002, and the previous denial was final, the earliest disability onset date available was March 22, 2002. *See* R. 26-37, 324. The SSA denied Torres' applications both initially and on reconsideration. R. 39, 41-46.

Torres asked for a hearing before an administrative law judge ("ALJ"). R. 48. An ALJ held a hearing on December 14, 2004. Torres, represented by an attorney, and Randolph Salmons, a vocational expert (VE), testified at the hearing. R. 320-54.

After considering the testimony and reviewing the evidence in the record, the ALJ found that Torres had not engaged in substantial gainful activity since the alleged disability onset date. R. 24. He concluded that Torres had fibromyalgia syndrome, polyarthritis of the hands and feet, possible degenerative joint disease of the lumbar spine, hypercholesterolemia, vertigo and diabetes mellitus 2, which were severe impairments. R. 21. These impairments did not meet or equal any impairments listed in the SSA regulations. R. 21.

The ALJ found little evidence to support a finding of disability before February 11, 2003. He noted that a physician who reviewed Torres' records opined that Torres could sit, stand or walk 6 hours in an 8-hour workday and lift 20 pounds. He would have postural limitations, and would need to avoid extreme cold, heat and unprotected heights. The ALJ concurred with this assessment, and found that before February 11, 2003, Torres had the residual functional capacity (RFC) for light exertional work. R. 21-22. In reaching this conclusion, the ALJ found Torres' testimony not entirely credible regarding his functional limitations before February 11, 2003. R. 22.

The ALJ observed that, on February 11, 2003, Torres was examined by Dr. Bandealy, a rheumalotogist. At that time, Torres had multiple tender points and a significant amount of pain, tenderness and swelling in his hands and feet. By July 2004, he was in a wheelchair. R. 21.

The ALJ concluded that as of February 11, 2003, Torres had the RFC to stand or walk less than 2 hours and sit about 6 hours in an 8-hour workday, and lift 20 pounds. He could only occasionally engage in postural activities. He would need to avoid extreme cold, heat and unprotected heights. R. 22. The ALJ found that, due to significant pain, Torres' concentration would have been affected. As such, after February 11, 2003, Torres would be limited to simple repetitive tasks. R. 21-22.

Based on these RFC determinations, the ALJ concluded that Torres could not return to his past relevant work. R. 22. Relying on the testimony of the VE, the ALJ concluded that there was work available in the national economy that Torres could have performed before February 11, 2003. R. 23. However, there was no work that Torres could have performed on and after February 11, 2003. Accordingly, the ALJ concluded that Torres was disabled as of February 11, 2003, but not before. R. 23.

Torres requested that the Appeals Council review the ALJ's decision. R. 13. On June 28, 2007, the Appeals Council found no basis to review the ALJ's decision. R. 6-8. Torres sought review of this decision by this Court. Doc. No. 1.

**II.    JURISDICTION.**

As Torres has exhausted his administrative remedies, this Court has jurisdiction of this matter under 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

**III.   STATEMENT OF FACTS.**

After a thorough review of the record, I find that the pertinent facts are adequately stated in the ALJ's decision and the parties' memoranda of law.  Accordingly, I will only summarize the relevant facts to protect Torres's privacy as much as possible.

Torres was 42 years old on March 22, 2002.  R. 79.  He attended school through the tenth grade.  R. 326.  He previously worked as an electrician.  R. 327.

The medical records reflect that Caryn G. Hasselbring, M.D., examined Torres in March 2000.  At that time, he complained of back pain and difficulty bending or lifting.  He complained of constant pain, headaches, fatigue and weakness in his legs when he tried to walk.  R. 141.  Upon examination, Dr. Hasselbring noted that Torres had limited range of motion in forward flexion and tenderness at his shoulder, elbows, and down his calves and thighs.  Dr. Hasselbring concluded that Torres' condition was consistent with fibromyalgia.  R. 142.  She recommended that he exercise daily.  R. 143.

In September 2000, Gary D. Sladek, M.D., a rheumatologist, examined Torres.  Torres complained of low back pain, leg cramps, fatigue and insomnia.  Upon examination, Dr. Sladek observed that Torres did not tolerate flexion and had tenderness in his low back muscles.  His assessment was chronic low back pain.  R. 167.

In October 2000, Torres was hospitalized after a syncopal episode.  R. 144, 158. Evans E. Amune, M.D., examined Torres.  Torres walked with an antalgic gait, and he had tenderness through his lumbosacral area.  Dr. Amune found "tenderness in all groups of muscles, greater than 11 of 18 points consistent with the diagnosis of fibromyalgia."  R. 160.  Torres' range of motion

was reduced due to pain.  Dr. Amune's impression was that Torres suffered from diffuse myofascial pain with the need to rule out fibromyalgia.  *Id.*

In January and February 2001, Addam Masri, M.D., examined Torres.  Torres' back was tender on palpation, and his range of motion was limited.  He was being treated with aqua therapy and medication.  R. 170-71.

In May, August and November 2001, medical records reflect that Torres continued to complain of low back and neck pain.  R. 173-75.

As of August 2002, Emilio Alfonso, M.D., opined that blood work showed normal markers for rheumatoid arthritis.  R. 182.

In a written disability report dated August 2002, Torres indicated that he had severe fatigue and dizziness. Pain was present on exertion.  R. 87.  His wife concurred that Torres could not lift a pan of water or take things out of the oven.  R. 133.  He could not stand, sit or walk for any length of time, and he could not bend.  R. 135.  He attempted to help with housework a little at a time throughout the day.  R. 133.  She indicated that Torres was unable to concentrate and remember things due to pain.  R. 134-35.  He could, however, follow short, simple instructions.  R. 135.

In December 2002, Torres reported that he experienced severe burning muscle pain, headaches, cramps, and spasms every day.  R. 104.  He was also fatigued due to his medication.  R. 105.  He did not perform household chores.  He had trouble sleeping due to pain.  R. 104-05.  He had difficulty remembering dates and events and was not able to concentrate or meet deadlines.  R. 115.  His condition remained the same through January 2003.  R. 107-15.

In January 2003, Gloria H. Hankins, M.D., prepared a physical RFC assessment after review of Torres' records. R. 183-90. She concluded that Torres could lift up to 50 pounds occasionally and 25 pounds frequently. He could sit, stand or walk about 6 hours in an 8-hour workday. R. 184.

Also in January 2003, Rene Brown, Psy.D., prepared mental RFC assessments based on a review of Torres' records. R. 192-209. She concluded that Torres would have moderate limitations in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, and maintain regular attendance. R. 192, 206. He would also be moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. R. 193.

Karamali A. Bandealy, M.D., examined Torres on February 11, 2003. Torres reported that he had had lower back pain with multiple muscle pains since 1997. He believed that the pain was spreading, and he had constant back spasms, daily headaches extending from his shoulders, disturbed sleep and fatigue. R. 212. Upon examination, Dr. Bandealy noted some tenderness in Torres' right hand and feet. Trigger points were all tender to palpation, but his range of motion was intact with no muscle atrophy. Dr. Bandealy's assessment was that Torres had fibromyalgia syndrome, polyarthritis of the hands and feet, possible degenerative joint disease (DJD) of the lumbar spine, hypercholesterolemia, vertigo and diabetes mellitus type 2. Dr. Bandealy emphasized the need to exercise, and he prescribed medication. R. 213.

In April 2003, Torres reported that his burning muscle pain and spasms were more severe and intense. He also had more frequent headaches. R. 126. In a follow-up visit with Dr. Bandealy, Torres reported a significant amount of pain despite taking medication. R. 210.

In May 2003, Donald Warren Morford, M.D., prepared a physical RFC assessment after review of Torres records. R. 248-55. He concluded that Torres could lift up to 20 pounds occasionally and 10 pounds frequently. He could sit, stand or walk about 6 hours in an 8-hour workday. R. 249. He could only occasionally engage in postural activities. R. 250. He must avoid concentrated exposure to extreme cold and heat and hazards. R. 252.

Also in May 2003, Michael H. Zelenka, Ph.D., prepared mental RFC assessments based on review of Torres' records. R. 235-47. He found that Torres had no medically determinable mental impairment at that time. R. 247.

Torres continued to seek treatment for back pain throughout 2003. *See, e.g.,* R. 270-76. In July 2003, Carlos Jassir, M.D., examined Torres at the request of Dr. Bandealy. At that time, Torres complained of low back pain at a level of 10 on a 10-point scale. An x-ray and MRI of Torres' back were normal. R. 256. Dr. Jassir observed that Torres walked with an antalgic gait. R. 258. He had tenderness on palpation in the area of this thoracic and sacral spine. R. 260. Dr. Jassir found no etiology for Torres' symptoms, but opined that they were probably related to myofascitis and fibromyalgia. R. 261. He prescribe additional pain medication, an anti-depressant, and physical therapy. R. 262.

In April 2004, an MRI showed a mild bulge at L4-5. R. 288.

In July 2004, Torres was hospitalized for intractable vertigo and headache.  He was treated with medication.  R. 282-83.  On August 5, 2004, Torres appeared in Dr. Alfonso's office in a wheelchair.  R. 290.

In October 2004, Torres was hospitalized for a myocardial infarction.  R. 315.  A cardiac catheterization was performed.  R. 319.

At the ALJ's hearing, Torres testified that he was constantly in pain throughout his body and was often dizzy due to fibromyalgia.  R. 329-30, 333.  He rated the pain as 5 or 6 on a 10-point scale with medication.  R. 330.  Sometimes the pain was so severe that he could not walk, so he used a wheelchair.  R. 331.  He had difficulty focusing.  R. 335.  Pain interfered with his sleep.  R. 343.  He had been fatigued since his heart surgery.  R. 332.  He spent much of the day lying down or sleeping.  R. 332-33, 352.  He did not drive due to the influence of his medication.  R. 327.

The ALJ asked the VE to assume an individual of Torres' age, education and past work experience.  R. 346.  "Further assume that this individual has a residual functional capacity of performing the exertional demands of light work, with the following additional limitations: posturally to be able to climb, balance, stoop, kneel, crouch and crawl only occasionally; . . . to avoid concentrated exposure to extreme cold and heat, avoid concentrated exposure to fumes and to avoid concentrated exposure to machinery . . . [and] open heights."  R. 346.  The VE opined that this individual could perform non-precision, electronic assembly positions, which were light, semi-skilled or unskilled work.  R. 346.

The ALJ added a limitation that the hypothetical individual could only understand, remember and carry out simple instructions and perform simple, routine tasks.  R. 347.  With this limitation, the VE opined that the individual could still perform the identified unskilled work.  R. 348.  If the individual could only perform sedentary work, the VE opined that the number of assembly positions would be much fewer.  R. 348-49.

The ALJ then asked the VE whether there were jobs Torres could perform if he had to lie down 4 hours a day.  The VE opined that with this limitation, there would be no jobs that the hypothetical individual could perform.  R. 351.

## IV.     STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.     ANALYSIS.

Torres alleges that the ALJ erred in concluding that he was not disabled before February 11, 2003, arguing that his condition did not change significantly as of that day. He asserts that pursuant to Social Security Ruling 83-20, the ALJ should have called upon a medical advisor to determine the onset date of his disability. He contends that the ALJ did not properly assess his credibility. Therefore, he asserts that the ALJ provided an inaccurate hypothetical question to the VE regarding his functional capacity. All of these arguments arise, essentially, from Torres' contention that the ALJ did not properly assess the functional limitations arising from his fibromyalgia. I will address only the first assignment of error in detail, because I find it to be dispositive.[2]

Ruling 83-20 addresses the determination of a disability onset date in the case of slowly progressive impairments. It provides as follows:

> The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s)became disabling. With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it

---

[2] I advised counsel in the scheduling order that issues not specifically addressed would be waived. *See* Doc. No. 12 at 2.

> will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. . . .
>
> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

Soc. Sec. R. 83-20, 1983 WL 31249 at 2-3.

In determining the onset date of Torres' disability, the ALJ wrote that "[c]linical findings do not show significant limitations or pain until February 11, 2003." R. 22. This finding is not supported by substantial evidence. In October 2000, Dr. Amune observed that Torres' range of motion was reduced due to pain, and he walked with an antalgic gait. In early 2001, Dr. Masri also noted that Torres' range of motion was limited. In January 2003 and in May 2003, before and after the disability onset date set by the ALJ, reviewing physicians concurred in their assessments that Torres could perform at least light exertional work.[3] The ALJ found that Torres did not have a severe mental impairment before February 11, 2003, but he based this finding on a mental RFC assessment prepared in May 2003, after the disability onset date. R. 20-21. The ALJ did not discuss the opinion rendered by a reviewing psychologist in January 2003, that Torres would have moderate limitations in his ability to maintain attention and concentration. Based on these records, there is no clear indication of the date when Torres' condition reached disabling proportions.

---

[3] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Accordingly, remand is required to permit the Commissioner to call upon a medical advisor to determine when Torres became disabled as required by Ruling 83-20. In making this assessment, Torres and the Commissioner should make a renewed effort to gather all of the available medical evidence, particularly records of treatment in 2002.[4]

## VI.  RECOMMENDATION.

For the reasons stated herein, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings. I further recommend that the Court direct the Clerk of Court to issue a judgment consistent with its order on this Report and Recommendation and, therefore, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** In Orlando, Florida on July 25, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[4] Torres requests that the Court order the Commissioner to award him benefits. An award of benefits is appropriate only when the Commissioner has considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Because the opinion of a medical expert is necessary to determine the disability onset date, the Commissioner has not yet considered all of the essential evidence.